STATE OF NORTH CAROLINA v. ROY DEAN WORLEY

No. COA08-1532

(Filed 21 July 2009)

## 1. Sexual Offenders— registration—change of address—homeless individuals

The trial court did not err by denying defendant's motion to dismiss a charge of failure to comply with sex offender registration change of address requirements. Although defendant's contention rests on the apparent assumption that individuals with no permanent abode are not required to provide change of address information until they obtain a new permanent address, the registration statutes operate on the premise that everyone does at all times have an address of some sort, even if it is a homeless shelter, a location under a bridge or some similar place.

## 2. Appeal and Error— preservation of issues—constitutional arguments—not raised below—not considered

Constitutional arguments that sexual offender registration statutes were void for vagueness that were not raised at trial were not considered on appeal.

Appeal by Defendant from judgment entered 8 July 2008 by Judge J. Marlene Hyatt in Buncombe County Superior Court. Heard in the Court of Appeals 20 May 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Daniel J. Clifton, for Defendant.*

ERVIN, Judge.

Roy Dean Worley (Defendant) appeals from a judgment entered 8 July 2008 following his conviction for willfully failing to comply with the change of address requirements applicable to registered sex offenders in violation of N.C. Gen. Stat. § 14-208.11(a)(2) that sentenced him to a term of 107 to 138 months imprisonment in the custody of the North Carolina Department of Correction.[1] After careful consideration of Defendant's challenges to his conviction, we find no error.

At trial, the State presented evidence which tended to show that Defendant pled guilty to four counts of taking indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1. Judgment was entered against Defendant on the basis of these guilty pleas on 15 April 2006. Defendant was thereafter required to register as a sex offender pursuant to N.C. Gen. Stat. § 14-208.7(a). According to N.C. Gen. Stat. § 14-208.9(a), "[i]f a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered."[2]

Detective Courtney Mumm (Detective Mumm) of the Buncombe County Sheriff's Department oversaw the sex offender registration program in Buncombe County from the beginning of 2005 through February 2008. In 2004, Defendant received an address verification notice sent to him by the State Bureau of Investigation (SBI) at an address in the Lee Walker Heights Apartments in Asheville, North Carolina (Lee Walker Heights).[3] Defendant returned the letter, indicating that he had moved to Candler Knob Road in Asheville, North Carolina (Candler Knob), on 14 September 2004.

On 19 May 2005, Defendant submitted a notice of change of address indicating that he had moved back to Lee Walker Heights. At

---

1. Although Defendant's brief and the judgment and commitment entered against Defendant indicate that Defendant was also convicted of having attained the status of an habitual felon, no verdict sheet reflecting the jury's determination of Defendant's habitual felon status was included in the record on appeal.

2. Effective 1 December 2008, N.C. Gen. Stat. § 14-208.9(a) requires a sex offender to "report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered." However, at the time of Defendant's conviction, the statute prior to the 1 May 2009 amendment applied.

3. Lee Walker Heights is a public housing facility operated by the Asheville Housing Authority (Housing Authority).

this time, Defendant lived with Laura Thomen (Thomen), despite the fact that Housing Authority rules and Thomen's lease prohibited registered sex offenders from residing there. As a result of this violation of the terms and conditions of her lease, Thomen and everyone living in her Lee Walker Height's apartment, including Defendant, were evicted.

After Detective Mumm mentioned that Defendant was living with Thomen despite his status as a convicted sex offender, Cornelia Battle, the manager of Lee Walker Heights (Battle), called Thomen in for a conference and told her that her lease would be cancelled. A notice instructing Thomen to vacate the Lee Walker Heights apartment was sent in July. The Housing Authority obtained the issuance of a Magistrate's Summons against Thomen on 29 July 2005. The court date specified in the Magistrate's Summons was 11 August 2005. According to one of Battle's records dated 30 August 2005, Thomen left her key in the drop box on 10 August 2005. After the court date, the locks on Thomen's apartment were changed. Defendant stopped living in Lee Walker Heights after the Housing Authority changed the locks.

The SBI sent an address verification notice to Defendant at his Lee Walker Heights address in 2005, but it was returned unclaimed. After becoming concerned that Defendant had left Lee Walker Heights without updating his address, Detective Mumm went to the Candler Knob address in an unsuccessful attempt to locate him. Detective Mumm had no contact with Defendant until he completed a change of address notice on 16 September 2005, in which Defendant stated that he had moved back to Candler Knob. On the form which he submitted to the Sheriff's Department at that time, Defendant stated that the effective date of his change of address was 16 September 2005.

In his own testimony, Defendant acknowledged that he had been convicted of a reportable offense in Haywood County and that he understood that he was required to register as a sex offender. After being placed on the registry, Defendant has changed his address ten or fifteen times. Defendant admitted knowing that, when he moved, he had ten days within which to notify the Sheriff's Department of his new address.

Defendant stated that after leaving Lee Walker Heights, he went back to Candler Knob. He then moved from Candler Knob to Kenilworth. Defendant testified that he had been homeless for three and one-half years, that he stayed in a van that resembled a camper,

and that Detective Mumm was not able to locate him at Candler Knob because he was staying in the camper rather than the house.

Defendant went to the Sheriff's Department after he left Lee Walker Heights and changed his address to Candler Knob. At that time, Defendant did not talk to Detective Mumm; instead, he filled out some paperwork and gave it to the officer at the front desk, who said that the paperwork would be given to Detective Mumm. Although Defendant did not give a specific date when he went to the Sheriff's Department, he testified that he might have gone on 16 September 2005.[4]

On 19 October 2005, a warrant charging Defendant with failure to notify the Sheriff's Department of his change of address was issued. On 7 August 2006, the Buncombe County grand jury returned an indictment charging Defendant with failing to provide written notice of his change of address within the required ten day period. On 8 July 2008, a jury convicted Defendant of failing to comply with the sex offender registration law.[5] On the same date, the trial court entered judgment sentencing Defendant to a term of 107 to 138 months imprisonment in the custody of the North Carolina Department of Correction. Defendant noted an appeal to this Court from the trial court's judgment.

## I: Motions to Dismiss

**[1]** Defendant initially contends that the trial court erred by denying his motions to dismiss at the close of the State's evidence and at the close of all evidence.[6] We disagree.

---

4. Although Defendant's trial counsel sought and obtained the entry of two orders requiring that Defendant be examined for the purpose of determining his competence to stand trial, both examinations resulted in determinations that Defendant was, in fact, competent.

5. As noted above, Defendant was evidently convicted of having attained habitual felon status as well.

6. According to well-established North Carolina law, if a defendant "introduces evidence" after the denial of a motion to dismiss made at the close of the State's evidence, "he thereby waives [the] motion . . . made prior to the introduction of his evidence and cannot urge such prior motion as ground for appeal." *State v. Bruce*, 315 N.C. 273, 280, 337 S.E.2d 510, 515 (1985) (quoting *State v. Leonard*, 300 N.C. 223, 231, 266 S.E.2d 631, 636, *cert. denied*, 449 U.S. 960 (1980)). As a result of the fact that Defendant offered evidence following the denial of his motion to dismiss at the close of the State's evidence, the correctness of the trial court's decision to deny that motion is not properly before us. For that reason, the discussion in the body of this opinion focuses on Defendant's contention that the trial court erroneously denied Defendant's motion to dismiss at the close of all of the evidence.

When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the record evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. McCullers*, 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995). "The State is entitled to every reasonable intendment and inference to be drawn from the evidence, and any contradictions and discrepancies are to be resolved in favor of the State." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983). The only issue before the trial court in such instances is " 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. Turnage*, 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (internal citation omitted)). " 'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Turnage*, 362 N.C. at 493, 666 S.E.2d at 755 (quoting *Crawford*, 344 N.C. at 73, 472 S.E.2d at 925). As long as the evidence permits a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also "permits a reasonable inference of the defendant's innocence." *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002).

The North Carolina Sex Offender and Public Protection Registration Programs require every individual who has been convicted of a reportable offense as defined by N.C. Gen. Stat. § 14-208.6(4), a category which includes offenses against minors and "sexually violent offenses," to register as a convicted sex offender with the sheriff of the county in which the person resides. N.C. Gen. Stat. § 14-208.7(a). According to the relevant statutory provisions, the sheriff in each of North Carolina's one hundred counties is required to obtain certain information from registering sex offenders, including the individual's full name, physical description, current photograph, fingerprints, driver's license number, home address, and the "type of offense for which the person was convicted, the date of conviction, and the sentence imposed." N.C. Gen. Stat. § 14-208.7(b). "If a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." N.C. Gen. Stat. § 14-208.9(a).

The General Assembly has imposed criminal penalties upon individuals who are required to register and fail to either register or take

some other action required by law. N.C. Gen. Stat. § 14-208.11. More particularly, N.C. Gen. Stat. § 14-208.11 provides that:

> (a) A person required by this Article to register who willfully does any of the following is guilty of a Class F felony:
>
>     . . . .
>
>     (2) Fails to notify the last registering sheriff of a change of address as required by this Article.

N.C. Gen. Stat. § 14-208.11. "The crime of failing to notify the appropriate sheriff of a sex offender's change of address under N.C. Gen. Stat. § 14-208.11(a) is a strict liability offense." *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (citing *State v. Bryant*, 359 N.C. 554, 562, 614 S.E.2d 479, 484 (2005)). A conviction for violating N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2) requires proof beyond a reasonable doubt that: "(1) the defendant is 'a person required . . . to register,' N.C. Gen. Stat. § 14-208.11(a); (2) the defendant 'change[s]' his or her 'address,' N.C. Gen. Stat. § 14-208.11(a)(2); and (3) the defendant '[f]ails to notify the last registering sheriff of [the] change of address,' . . . 'not later than the tenth day after the change,' N.C. Gen. Stat. § 14-208.9(a)." *Abshire*, 363 N.C. at 324, —— S.E.2d at ——.

"[T]he statute describes a change of address as a discrete event and not as a nebulous process." *Id.*, 363 N.C. at 329, —— S.E.2d at ——. Although "[t]he word 'address' is not explicitly defined by statute," "the Legislature is," in such instances, "presumed to have used the words of a statute to convey their natural and ordinary meaning." *Id.*, 363 N.C. at 329, —— S.E.2d at —— (citing *Perkins v. Ark. Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2004) (citations and internal quotations omitted)). "To whatever degree the meaning of address may be ambiguous," courts must "refer to the purpose of the statute and the intent of the legislature in order to derive an appropriate interpretation." *Id.*, 363 N.C. at 330, —— S.E.2d at —— (quotation omitted). " 'The best indicia of [the legislature's] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.' " *Id.*, 363 N.C. at 330, —— S.E.2d at —— (quoting *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted)).

The purpose of the sex offender registration program is "to assist law enforcement agencies and the public in knowing the whereabouts

of sex offenders and in locating them when necessary." *Id.*, 363 N.C. at 330, —— S.E.2d at ——. The Supreme Court rejected this Court's description of a registered sex offender's address as "a place where a registrant resides and where that registrant receives mail or other communication," *State v. Abshire*, 363 N.C. App. 322, 330, 666 S.E.2d 657, 663 (2008), *rev.* —— N.C. ——, —— S.E.2d —— (2009), since such an "interpretation . . . would thwart the intent of the legislature" by allowing a sex offender "to actually live at a location other than where he or she was registered and not be required to notify the sheriff of that new address as long as he or she continued to receive United States Postal Service mail at the registered address." According to the Supreme Court, such a definition would "enable sex offenders to elude accountability from law enforcement and . . . expose the public to an unacceptable level of risk." *Abshire*, 363 N.C. at 330, —— S.E.2d at ——. For that reason, the Supreme Court has concluded that the term "address" as used in the sex offender registration statutes should be understood as "describing or indicating the location where someone lives." *Id.*, 363 N.C. at 331, —— S.E.2d at ——. As a result, "a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary." *Id.*, 363 N.C. at 331, —— S.E.2d at ——.

In this case, Deputy Clerk of Superior Court Elizabeth Whittenberger testified at trial that judgment was entered against Defendant on 15 April 1996 based on his plea of guilty to four counts of taking indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1. Thus, the undisputed record evidence clearly establishes that Defendant was subject to the registration regimen set out in N.C. Gen. Stat. § 14-208.7(a). For that reason, the only two issues that were in dispute at trial were whether Defendant had changed "the actual place of abode where he or she lives, whether permanent or temporary," and, if so, whether he gave proper notice to the Buncombe County Sheriff's Department within ten days of any such change of address.

Battle testified that she hand wrote a statement on 30 August 2005 indicating that Thomen left her keys in the drop box and vacated her apartment at Lee Walker Heights on 10 August 2005 as a result of her eviction, which stemmed from a breach of her lease resulting from her decision to allow Defendant, a registered sex offender, to live there. Despite the fact that Thomen returned her keys, the locks on the doors to her apartment were changed be-

cause "sometimes" evicted residents "come back[.]" When asked whether Defendant "stopped living there" after the Housing Authority obtained a judgment against Thomen on 11 August 2005, Battle responded, "[h]e had to because we changed the locks." Detective Mumm testified that Defendant completed a change of address form indicating that he had moved from Lee Walker Heights to Candler Knob on 16 September 2005. After receiving notice of Thomen's eviction, Mumm had attempted to "ascertain whether the defendant still lived" at Lee Walker Heights and did not see him there. When she asked the apartment manager whether Thomen and her roommates still lived in the apartment, the manager answered, "[n]o, she had been evicted."

Defendant testified that he moved out of Lee Walker Heights in late July or early August and that he knew that he only had ten days to notify the Sheriff's Department of his move. However, Defendant admitted that "I have a tendency to forget sometimes[.]" Defendant described himself as a "drifter" and attested that "it's [sometimes] difficult for the Sheriff's Office to keep up" with him. Defendant testified that he went to the Sheriff's Department and said, "I'm here to register." An officer "gave him a piece of paper to change my address from Lee Walker to Candler Knob[,]" and Defendant submitted the form. The form was dated 16 September 2005. When asked whether the "meeting at the Sheriff's Office . . . happened [in] mid September 2005[,]" Defendant replied, "I'm not sure, but I think it is, yes."

In seeking to overturn his conviction on appeal, Defendant argues that he had not established a new "address" after leaving Lee Walker Heights until the date upon which he submitted his notice of change of address to the Buncombe County Sheriff's Department despite the fact that he had been evicted from Lee Walker Heights more than a month earlier. In essence, Defendant appears to argue that no change of address has occurred until he had obtained a new permanent residence or abode. In order to provide a factual predicate for this argument, Defendant testified that, after leaving Lee Walker Heights:

Well, I went back to Candler Knob, and I moved from Candler Knob to 41 Kenilworth, and when they come (sic) to check on me I wasn't there at the time because I move around a lot. I have a lot of friends that I stay with off and on. I have been homeless for about three and a half years. I stayed in the van the biggest part of the day time. I didn't stay in the house, but I stayed in the van

that was like a camper, and I came to town a lot. I rode the bus a lot into town back and forth, and that's why they couldn't keep up with me. I'm a hard person—I'm a drifter, you know as they say, but drifting from one town to the next, you know, one address to the next, you know. . . .

As we understand his testimony, Defendant's van was located at the Candler Knob address, which he gave as his new address in his 16 September 2005 filing with the Sheriff's Department after he left Lee Walker Heights. After careful consideration, we do not find Defendant's argument persuasive.

At an absolute minimum, the record contains evidence tending to show that Defendant left Lee Walker Heights on or before 10 August 2005 and failed to report a new address until 16 September 2005. According to his own testimony, Defendant claims that, like many individuals, he traveled from place to place within his hometown. In addition, Defendant stated that he spent nights at the homes of friends and may have even traveled to different towns. Even so, there is substantial evidence tending to show that Defendant "reside[d]" at Candler Knob after he left Lee Walker Heights. Defendant himself stated that after he left Lee Walker Heights, "[w]ell, I went back to Candler Knob . . . . I stayed in the van the biggest part of the day time. I didn't stay in the house, but I stayed in the van that was like a camper[.]" When taken in the light most favorable to the State, this evidence is, if believed, sufficient to establish that Defendant changed his "actual place of abode where he or she lives, whether permanent or temporary," *Abshire*, 363 N.C. at 331, —— S.E.2d at ——, from Lee Walker Heights to Candler Knob by no later than 10 August 2005 and that he failed to report his new address to the Buncombe County Sheriff's Department until 16 September 2005. As a result, we believe that the record contains evidence tending to show both that Defendant changed his "address," as that term is used in N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2), and that he failed to notify the Buncombe County Sheriff's Department of this development within ten days after it occurred.

Defendant's challenge to the sufficiency of the evidence to support his conviction for violating N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2) rests on the apparent assumption that individuals with no permanent abode are not required to provide change of address information until such time as they obtain a new permanent residence. The reference in the Supreme Court's opinion in *Abshire*, 363 N.C. 331, —— S.E.2d ——, to a "temporary" residence coupled with

the factual analysis in the Supreme Court's decision[7], confirms that the sex offender registration statutes operate on the premise that everyone does, at all times, have an "address" of some sort, even if it is a homeless shelter, a location under a bridge or some similar place. In the event that we were to accept the argument that "drifters" such as Defendant have no "address" as defined by N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2), then such individuals would be effectively immune from the registration requirements found in current law as long as they continued to "drift." The adoption of such an understanding of the relevant statutory provisions would completely thwart the efforts of "law enforcement agencies and the public [to] know the whereabouts of sex offenders and [to] locate them if necessary." *Abshire*, 363 N.C. at 330, —— S.E.2d at ——. Thus, we reject Defendant's contention that there are occasionally times when a registered sex offender lacks a reportable "address" for purposes of N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2).

As a result, since Defendant did not intend to return, nor was it possible for him to return, to Lee Walker Heights, his "address" as defined in *Abshire* undoubtedly "change[d]" following Thomens' eviction. Furthermore, there is substantial evidence in the record tending to show that Defendant changed his "address" from Lee Walker Heights to Candler Knob more than ten days prior to 16 September 2005. At an absolute minimum, Defendant had a "place of abode" of some nature after his departure from Lee Walker Heights on or before 10 August 2005 which was not reported to the Buncombe County Sheriff's Department on or before 20 August 2005.[8] Thus, we conclude there was ample record support for the jury's verdict convicting Defendant of failing to provide timely notice of his change of address in violation of N.C. Gen. Stat. § 14-208.11(a)(2). For that reason, the

---

7. The essential argument advanced on appeal in *Abshire* was that, since the defendant continued to receive mail at the residence of her boyfriend's father and returned there periodically, the fact that she had been staying temporarily at her parent's residence while she got "her emotions together" did not constitute a change of address for purposes of the sex offender registration statutes. By concluding that the evidence was sufficient to permit a reasonable inference "that defendant was indicating a change in her actual place of abode, even for just a temporary period," and that this evidence sufficed to support a conviction, *Abshire*, 363 N.C. at 333, —— S.E.2d at ——, the Supreme Court necessarily rejected the basic thrust of Defendant's argument on appeal.

8. Thus, even if Defendant moved from Lee Walker Heights to Laural Knob and stayed there less than ten days before moving to Kenilworth, he was still required to have provided address information of some nature by no later than 20 August 2005, a legal obligation which he totally failed to honor.

trial court did not err by denying Defendant's motion to dismiss at the close of all evidence. This assignment of error is overruled.

## II:  Void for Vagueness Challenge to Change of Address Statutes

[2] Defendant also contends that the trial court erred by not declaring N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2) unconstitutionally void for vagueness given the absence of a statutory definition of "address" or "change of address" that suffices to provide adequate guidance to someone in Defendant's unique situation. We note that Defendant did not raise his void for vagueness challenge to N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2) before the trial court. As a result, we need not consider Defendant's constitutional arguments on the merits and decline to do so. *See* N.C. R. App. P. 10(b)(1); *see also State v. Raines*, 362 N.C. 1, 18, 653 S.E.2d 126, 137 (2007); *State v. Benson*, 323 N.C. 318, 321-22, 372 S.E.2d 517, 519 (1988). This assignment of error is overruled.

For all of the reasons set forth above, we conclude that Defendant received a fair trial free from prejudicial error.

NO ERROR.

Judges McGEE and JACKSON concur.