STATE OF NORTH CAROLINA v. TERRY A. FOX

No. COA11-273

(Filed 4 October 2011)

### 1. Sexual Offenders—registration—unreported change of address—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss charges of failing to comply with the sex offender registration reporting requirements in 2009 by not notifying the sheriff of a change of his address.

### 2. Sexual Offenders—registration—change of address reporting—intent

Although the *mens rea* requirement in the sex offender change of address statute was removed by a 1997 amendment to N.C.G.S. § 14-208.11(a), a 2006 amendment reintroduced intent-based language.

### 3. Appeal and Error—preservation of issues—void for vagueness challenge—not raised at trial

A constitutional vagueness challenge to the sex offender change of address statutes was not raised at trial and was not considered on appeal.

### 4. Appeal and Error—preservation of issues—invited error rather than plain error—not reviewed

Defendant's asserted plain error in the instructions in a sex offender change of address prosecution was actually invited error because defendant consented to the manner in which the trial court gave the instruction and adopted language from the instruction in his closing argument. The asserted error was not reviewed.

### 5. Constitutional Law—effective assistance of counsel—fairness of trial—not affected

Defendant was not denied effective assistance of counsel where his attorney failed to object to testimony in a prosecution where the failure to object did not affect the fairness and integrity of the proceedings or turn defendant's trial into a farce and mockery of justice.

Appeal by defendant from judgment entered 4 November 2010 by Judge Kenneth F. Crow in Carteret County Superior Court. Heard in the Court of Appeals 12 September 2011.

*Roy Cooper, Attorney General, by Peter A. Regulski, Assistant Attorney General, for the State.*

*John T. Hall, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Terry A. Fox appeals from a judgment entered upon a jury verdict finding him guilty of willfully failing to comply with the sex offender registration reporting requirements set forth in N.C.G.S. § 14-208.9. We find no error.

Defendant stipulated at trial and does not dispute on appeal that he was convicted of second-degree rape on 9 February 1996 in Carteret County, North Carolina, and that, as a result of this conviction, defendant was required to register as a sex offender in the county. The record further shows that defendant did register as a sex offender in Carteret County on 2 February 2006 and that he "was required to notify the sheriff of a change of address no later than 3 days after the change."

The evidence presented at trial tended to show that, in 2009, Angela Wall lived in the downstairs apartment of a two-story, two-unit converted garage at 2717 Piney Park Circle in Morehead City, North Carolina. Ms. Wall worked evenings at the Crystal Clean Laundromat, and spent her days at home with her daughter and then-four-year-old grandson. According to Ms. Wall's testimony, when the apartment above hers became vacant, Ms. Wall notified her manager at the laundromat, Katina Teague, of the vacancy, who moved into the upstairs apartment shortly thereafter with her twelve-year-old son, Daren. Because of the open, external staircase leading up to Ms. Teague's apartment, and because the only barrier between the apartments was Ms. Teague's floor, Ms. Wall said that, while she was in her apartment or outside smoking, she was aware of the comings and goings in and out of Ms. Teague's apartment and could "hear[] everything."

According to Ms. Wall, about two months after Ms. Teague moved into the upstairs apartment, defendant—who had recently begun dating Ms. Teague—also moved into the upstairs apartment. Defendant's living arrangement with Ms. Teague continued for several months until the end of December 2009, when Ms. Wall "got the word" that

defendant was a registered sex offender, and reported the informa-
tion to her landlord and then to the police.

Detective Harold Pendergrass with the Carteret County Sheriff's
Department was responsible for overseeing the sex offender regis-
try for Carteret County. Detective Pendergrass testified that, in
November 2008, he met with defendant to review defendant's respon-
sibilities to comply with the statutory requirements of registering as
a convicted sex offender. During this visit with Detective Pendergrass,
defendant completed an acknowledgement form on which defendant
affixed his initials more than twenty-five times to affirm that he
understood what was required of him to remain in compliance with
the sex offender registry program, including the requirement that he
must notify the county sheriff when he changes his address. At the
time that Ms. Wall contacted the police in December 2009 to report
that defendant was living in the apartment above hers in Morehead
City, the detective had not been informed that defendant had changed
his address from his father's residence at 177 Pagoda Court in Newport,
North Carolina, to the Piney Park Circle apartment in Morehead City.

After concluding his investigation of Ms. Wall's complaint, the
detective obtained a warrant for defendant's arrest. Defendant was
indicted for failing to notify the sheriff of his change of address as
required by Article 27A of the General Statutes. *See* N.C. Gen. Stat.
§§ 14-208.9, 14-208.11(a)(2) (2009). At trial, defendant moved to dismiss
the charge at the close of the State's evidence and at the close of all of
the evidence, which the court denied. Defendant was found guilty by a
jury of willfully failing to comply with the change of address notifica-
tion requirements of the sex offender registry and, on 4 November
2010, the court ordered defendant to serve a mitigated sentence of
twenty to twenty-four months imprisonment. Defendant appeals.

I.

[1] Defendant first contends the trial court erred by denying his
motion to dismiss because he asserts that the State provided insuffi-
cient evidence that defendant changed his address. We disagree.

"Upon defendant's motion for dismissal, the question for the
Court is whether there is substantial evidence (1) of each essential
element of the offense charged, or of a lesser offense included
therein, and (2) of defendant's being the perpetrator of such offense.
If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98,

261 S.E.2d 114, 117 (1980). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . ." *Id.* at 99, 261 S.E.2d at 117. "The defendant's evidence, unless favorable to the State, is not to be taken into consideration. However, when not in conflict with the State's evidence, it may be used to explain or clarify that offered by the State." *State v. Jones,* 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). "[C]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion." *Powell,* 299 N.C. at 99, 261 S.E.2d at 117. "The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *Id.* "The trial court's function is to test whether a *reasonable inference* of the defendant's guilt of the crime charged may be drawn from the evidence." *Id.*

Although the offense for which defendant was convicted is a violation of N.C.G.S. § 14-208.9, this Court has previously determined that, because N.C.G.S. §§ 14-208.9 and 14-208.11 "deal with the same subject matter, they must be construed in *pari materia* to give effect to each." *State v. Holmes,* 149 N.C. App. 572, 576, 562 S.E.2d 26, 30 (2002). N.C.G.S. § 14-208.9(a) provides, in relevant part: "If a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered." N.C. Gen. Stat. § 14-208.9(a); *Holmes,* 149 N.C. App. at 576, 562 S.E.2d at 30. A person required to register in accordance with Article 27A who "willfully . . . [f]ails to notify the last registering sheriff of a change of address as required by this Article" is guilty of a Class F felony. N.C. Gen. Stat. § 14-208.11(a)(2); *Holmes,* 149 N.C. App. at 576, 562 S.E.2d at 30. Read together, the offense of failing to notify the appropriate sheriff of a sex offender's change of address "contains three essential elements: (1) the defendant is a person required . . . to register; (2) the defend-ant change[s] his or her address; and (3) the defendant [willfully[1]] [f]ails to notify the last registering sheriff of [the] change of address, not later than

---

1. **[2]** We recognize that our Supreme Court determined that "[t]he crime of failing to notify the appropriate sheriff of a sex offender's change of address under N.C.G.S. § 14-208.11(a) is a strict liability offense." *State v. Abshire,* 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (citing *State v. Bryant,* 359 N.C. 554, 562, 614 S.E.2d 479, 484

the [third] day after the change." *State v. Abshire,* 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (omission and first, third, and fourth alterations in original) (citations and internal quotation marks omitted). Since defendant only argues that the State presented insufficient evidence that he changed his address, we limit our review accordingly.

In *Abshire,* ·our Supreme Court examined the definition of "address" as the term is used in N.C.G.S. §§ 14-208.9(a) and 14-208.11(a)(2) of the registration program, *see id.* at 329–32, 677 S.E.2d at 449–51, and concluded that "a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary," "so that law enforcement authorities and the general public know the whereabouts of sex offenders in our [S]tate." *Id.* at 331, 677 S.E.2d at 451; *see also id.* (noting that "a person's residence is distinguishable from a person's domicile[; d]omicile is a legal term of art that denotes one's permanent, established home, whereas a person's residence may be only a temporary, although actual, place of abode" (citation and internal quotation marks omitted)). In other words, "the Supreme Court has concluded that the term 'address' as used in the sex offender registration statutes should be understood as describing or indicating the location where someone lives," *State v. Worley,* 198 N.C. App. 329, 335, 679 S.E.2d 857, 862 (2009) (internal quotation marks omitted), "even if it is a homeless shelter, a location under a bridge or some similar place." *Id.* at 338, 679 S.E.2d at 864. "Determining that a place is a person's residence suggests that certain activities of life occur at the particular location." *Abshire,* 363 N.C. at 332, 677 S.E.2d at 451. "Beyond mere physical presence, activities possibly indicative of a person's place of residence are numerous and diverse, and there are

(2005), *on remand,* 178 N.C. App. 742, 632 S.E.2d 599 (2006) (unpublished)). However, this determination was based on "a 1997 amendment to this provision deleting the statutory *mens rea* requirement," *Bryant,* 359 N.C. at 562, 614 S.E.2d at 484, which had previously provided that a person who was required to register in accordance with Article 27A and failed to do so "knowingly and with the intent to violate the provisions of this Article" would be guilty of certain classes of offenses. 1995 Sess. Laws 2046, 2049, ch. 545, § 1. Nevertheless, when the statute was amended in 2006, subsection (a) was modified to provide that a person who was required to comply with the requirements of Article 27A and "willfully" failed to do so on or after 1 December 2006 would be guilty of a Class F felony. 2006 Sess. Laws 1065, 1070, 1085–86, ch. 247, §§ 8(a), 22. In other words, with its 2006 amendment, the General Assembly re-introduced intent-based language into the provision, effectively reviving the original *mens rea* requirement that had first been removed by the 1997 amendment and had rendered a violation of the statute a strict liability offense. Consequently, we believe that the elements of this offense should reflect the General Assembly's re-introduction of intent-based language into the statute in 2006.

a multitude of facts a jury might look to when answering whether a sex offender has changed his or her address." *Id.*

In the present case, Ms. Wall testified that, beginning about a month or two after Ms. Teague moved into the upstairs garage apartment in Morehead City, during the latter half of 2009, defendant stayed at Ms. Teague's apartment every day and evening. Ms. Wall made the following observations:

> First of all, I saw a duffle bag going up with him toting them. And then at night I'd grill out a whole lot in the summertime. They would come downstairs and commute [sic] with us. I'd see him leave with her, come back with her. In the morning time he would take her to work and come back on [sic] her vehicle at the home upstairs. I've seen him take Daren to school and come back with the vehicle, and he drove around all day, basically, on [sic] her vehicle while she worked and brought her lunch.

She also testified, "You could hear them upstairs and see them up and downstairs, the stairs going in, shut the lights out and go to sleep. You could hear them upstairs." She further testified that defendant and Ms. Teague would drink beer and "hang out" with Ms. Wall "[j]ust about every weekend." Detective Pendergrass then testified that, when he interviewed defendant's father, James Fox, at the end of 2009—with whom defendant was purportedly living during this time—Mr. Fox said that defendant "ha[d] not been living at the 177 Pagoda Court residence on a regular basis but instead was residing with a white female subject in Morehead City, North Carolina." Patrol Officer Tim Quillan further testified that, when he was dispatched to speak with defendant's father after Ms. Wall contacted the police, Mr. Fox "advised [the officer] that his son did not live there, [and that defendant] lived with his girlfriend somewhere in Morehead by the old Belk." Additionally, on cross-examination, Ms. Teague said that "[her] son told [her] that he told [Detective] Pendergrass that [defendant] lives [with them in Morehead City]." Therefore, we conclude that the State presented sufficient evidence to withstand defendant's motion to dismiss. Accordingly, we overrule this issue on appeal.

## II.

**[3]** Defendant next asserts that N.C.G.S. §§ 14-208.9 and 14-208.11 are "unconstitutionally vague" and that N.C.G.S. § 14-208.9 was applied against defendant "in an unconstitutional manner." However, defendant "did not raise his void for vagueness challenge to [N.C.G.S.]

§§ 14-208.9(a) and 14-208.11(a)(2) before the trial court." *See Worley,* 198 N.C. App. at 339, 679 S.E.2d at 864. Thus, "we need not consider [d]efendant's constitutional arguments on the merits and decline to do so." *See id.; State v. Creason,* 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985). Accordingly, we overrule this issue on appeal.

## III.

**[4]** Defendant next contends the trial court committed plain error by embellishing the third element of the substantive charge by defining the term "address" and instructing the jury as follows:

> Third thing the State must prove beyond a reasonable doubt is that the defendant willfully changed his address and failed to provide written notice of his new address in person within three business days of receiving it to the sheriff's office listed on the address verification form.

> Now, for the purposes of the North Carolina sex offender registry statute, the North Carolina Supreme Court has determined that a person's address has the same meaning as residence. In addition, our North Carolina Supreme Court has determined that a person's address or residence is the act or fact of living in a given place for some given time and that a person's address or residence is defined as a person's place of abode, whether permanent or temporary.

Defendant suggests that the trial court erred because it did not also instruct the jury that "mere physical presence at a location is not the same as establishing a residence." *See Abshire,* 363 N.C. at 332, 677 S.E.2d at 451.

During the charge conference in the present case, the State requested a modification to North Carolina Criminal Pattern Jury Instruction 207.75, which sets out the elements for willfully failing to comply with the sex offender registration law. *See* N.C.P.I. Crim. 207.75 (2009). After a brief discussion with counsel, the court provided copies of the proposed jury instructions and asked both counsel whether they had any objections to the proposed instructions. Neither counsel objected to the charge as written. Moreover, defense counsel incorporated the court's instructional language into his closing argument to the jury.

"It is well established that a defendant who 'causes' or 'joins in causing' the trial court to 'commit error is not in a position to repudiate his action and assign it as ground for a new trial.'" *State v. Jones,* ___ N.C. App. ___, ___, 711 S.E.2d 791, 796 (2011) (quoting *State v.*

*Payne*, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971)). Additionally, "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), *supersedeas denied and disc. reviews denied and dismissed as moot*, 355 N.C. 216, 560 S.E.2d 141–42 (2002).

Thus, "[a]lthough defendant labels this [issue on appeal] as 'plain error,' it is actually invited error because, as the transcript reveals, defendant consented to the manner in which the trial court gave the instructions to the jury," *see State v. Wilkinson*, 344 N.C. 198, 235–36, 474 S.E.2d 375, 396 (1996), and adopted the language from this instruction into his closing argument. Accordingly, "[i]f there was error in the charge, it was invited error and we shall not review it." *See id.* at 236, 474 S.E.2d at 396 (internal quotation marks omitted).

IV.

**[5]** Lastly, defendant contends he was denied effective assistance of counsel because his trial counsel failed to object to testimony that defendant claims was hearsay, and failed to object to testimony that defendant spent thirty days in jail for the offense of driving while his license was revoked. "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561–62, 324 S.E.2d 241, 248 (1985). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* at 563, 324 S.E.2d at 248.

Here, defendant first suggests he was prejudiced by his counsel's failure to object to his own witness's testimony that he served thirty days for his conviction on a Class 1 misdemeanor. *See* N.C. Gen. Stat. § 20 28(a) (2009). However, in light of defendant's stipulation that he was convicted of the then Class D—now Class C—felony of second-degree rape, *see State v. Lawrence*, 193 N.C. App. 220, 224, 667 S.E.2d 262, 265 (2008), and in the absence of legal argument in support of his assertion, we are not persuaded that defense counsel's failure to object to this testimony affected the "fairness and integrity" of the proceedings in the present case. Defendant also asserts without support that some of the testimony offered by defendant's girlfriend, by Detective Pendergrass, and by Officer Quillan included hearsay, and that defense counsel was ineffective for failing to object to this

testimony and for failing to request that the testimony be stricken. After careful review of defendant's limited argument, we conclude · that defense counsel's failure to object to or strike the challenged testimony did not amount to a representation that was "so lacking" as to turn defendant's trial into "a farce and a mockery of justice." *See State v. Sneed*, 284 N.C. 606, 612, 201 S.E.2d 867, 871 (1974). Accordingly, we overrule this issue on appeal.

No Error.

Judges BRYANT and CALABRIA concur.