NO. COA13-1234

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.                                    Forsyth County
                                      No. 12CRS060943
OMAR ANDRE MCFARLAND,
    Defendant.


Appeal by defendant from Judgment entered on or about 28 June 2013 by Judge Susan E. Bray in Superior Court, Forsyth County. Heard in the Court of Appeals 6 March 2014.

> *Attorney General Roy A. Cooper III, by Assistant Attorney General Laura E. Parker, for the State.*
>
> *James N. Freeman, Jr., for defendant-appellant.*


STROUD, Judge.


Omar McFarland ("defendant") appeals from the judgment entered after a Forsyth County jury found him guilty of failing to report a change of address as a sex offender. We find no error at trial, but remand for the trial court to make conclusions of law with regard to defendant's motion to suppress as required by statute.

I.   Background

Defendant was indicted in Forsyth County for failing to report a change of address as required by the sex offender registration statutes and for having attained habitual felon status. Defendant pled not guilty and proceeded to jury trial on 26 June 2013. Before trial, defendant filed a written motion to suppress statements he made to the police, which he contended were obtained in violation of his constitutional rights. The trial court denied the motion from the bench without explanation or oral findings of fact. The trial court then entered a written order with findings of fact on 24 June 2013.

At trial, the State's evidence tended to show that defendant was a convicted sex offender. Prior to being released from prison, defendant was given a notice of the rules applicable to sex offenders upon release, including the statutory requirement that he notify the sheriff's office of a change of address. Defendant signed the notice and indicated that he intended to reside at the Samaritan Ministries homeless shelter. He was released from prison on 9 October 2012. On 10 October 2012, defendant went to the Forsyth County Sheriff's Office to register as a sex offender. When he registered, defendant was given a more extensive notice of the rules that apply to sex offenders, which he signed. He initialed by each

rule. One of the rules listed concerned changes of address. It explained that

> [w]hen an offender that is required to register changes addresses, they must appear in person and provide written notification of this address change to the Sheriff in the county where they have most currently registered. This in-person notification must be made to the county Sheriffs within 3 business days of the address change. The offender must also register with the new Sheriff. I shall report the address or a detailed description of every location I reside or live at. I understand I must report a location even if it does not have a street address.

Defendant initialed this notice, indicating that he had read and understood it.

On 26 October 2012, Deputy R.C. Holland of the Forsyth County Sheriff's Office went to the Samaritan Ministries shelter to verify defendant's address. The shelter's records indicated that defendant had stayed there previously, but not since 2008. Deputy Holland reported his findings to Detective Gargiulo of the Sex Offender Registry Unit. Detective Gargiulo waited three days to allow defendant the opportunity to appear and change his address. On 30 October 2012, Detective Gargiulo secured a warrant for defendant's arrest.

The detective attempted to get in touch with defendant, unsuccessfully at first. Detective Gargiulo was able to speak

with defendant on the phone on 7 November 2012 and asked him to come to the Sheriff's Office. Defendant came into the office that same day. He was escorted to an unsecured interview room and was not handcuffed. He was not informed that a warrant for arrest had been issued. Detective Gargiulo and Corporal Sales then spoke with defendant about where he had been living. Defendant objected at trial to the admission of his statements, renewing the same objections raised by his motion to suppress. The trial court again overruled the objections.

Defendant at first said that he was staying at the Samaritan Ministries shelter. When confronted with evidence that he had not been staying there, in violation of the sex offender registration statutes, he explained that he was staying with various people and moving from place to place. Defendant asked how he could have an address when he was homeless. Detective Gargiulo explained that he had to notify the Sheriff's Office every time he changed residences. At the end of the interview, defendant was placed under arrest and served with the arrest warrant.

At the close of the State's evidence, defendant moved to dismiss the charges on the basis that N.C. Gen. Stat. § 14-208.11 (2011) was void for vagueness as applied to him and on

the ground that the State had failed to present sufficient evidence. The trial court denied defendant's motion. The jury found defendant guilty of violating N.C. Gen. Stat. § 14-208.11. Defendant then pled guilty to having attained habitual felon status, explicitly reserving his right to appeal the underlying conviction. The trial court found three mitigating factors and no aggravating factors. The trial court sentenced defendant to a mitigated range term of 58-82 months imprisonment. Defendant gave notice of appeal in open court.

## II. Motion to Dismiss

Defendant argues that the trial court erred in denying his motion to dismiss. First, he contends that N.C. Gen. Stat. § 14-208.11 (2011) is void for vagueness. Second, he argues that even if the statute is constitutional, the State failed to present sufficient evidence. We disagree.

## A. Standard of Review

We review the denial of a motion to dismiss premised on the alleged unconstitutionality of the criminal statute and the insufficiency of the evidence *de novo*. *State v. Buddington*, 210 N.C. App. 252, 254, 707 S.E.2d 655, 656 (2011); *State v. Fisher*, ___ N.C. App. ___, ___, 745 S.E.2d 894, 901, *disc. rev. denied*, ___ N.C. ___, 752 S.E.2d 470 (2013). "In reviewing challenges

to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Highsmith*, 173 N.C. App. 600, 605, 619 S.E.2d 586, 590 (2005) (citation and quotation marks omitted).

B.   Void for Vagueness

Defendant argues that the trial court erred in denying his motion to dismiss because N.C. Gen. Stat. § 14-208.11 (2011) is void for vagueness as applied to him. He contends that because he is homeless, a person of ordinary intelligence person could not know what "address" means in his case. We hold that the statute is not so vague that it violates due process.

Defendant moved to dismiss the charge against him on the basis that the statute is void for vagueness. Therefore, he has properly preserved this constitutional challenge. *Cf. State v. Fox*, 216 N.C. App. 153, 158-59, 716 S.E.2d 261, 266 (2011) (declining to consider the defendant's argument that the sex offender registration statute was void for vagueness where he failed to raise the constitutional issue at trial).

Defendant was indicted for violating N.C. Gen. Stat. § 14-208.11(a)(2), which establishes that a person required to

register under the sex offender registration statute commits a Class F felony if he "[f]ails to notify the last registering sheriff of a change of address as required by this Article." N.C. Gen. Stat. § 14-208.9(a) (2011) states, in relevant part, that "[i]f a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered." The statute does not define the term "address." Defendant contends that the absence of a definition makes the change-of-address requirement void for vagueness as applied to him because he was homeless, so he had no "address."

"To satisfy due process, a penal statute must define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement. The void-for-vagueness doctrine embraces these requirements." *Skilling v. United States*, 561 U.S. 358, 402, 177 L.Ed. 2d 619, 656 (2010) (citation, quotation marks, and brackets omitted). The North Carolina Supreme Court has "expressed an almost identical standard." *State v. Green*, 348 N.C. 588, 597, 502 S.E.2d 819, 824 (1998), *cert. denied*, 525

U.S. 1111, 142 L.Ed. 2d 783 (1999). Our Supreme Court has explained that "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *In re Burrus*, 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969) (citations and quotation marks omitted), *aff'd*, 403 U.S. 528, 29 L.Ed. 2d 647 (1971).

"Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met." *Id.* "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306, 170 L.Ed. 2d 650, 670 (2008). Moreover, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, [though] due process bars courts from applying a novel construction of a criminal statute to conduct that neither the

statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266, 137 L.Ed. 2d 432, 442-43 (1997) (citations omitted). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267, 137 L.Ed. 2d at 443.

Our Supreme Court clearly and unambiguously defined the term "address" as used in N.C. Gen. Stat. § 14-208.11 well before defendant was released from prison in October 2012. The Supreme Court explained that

> [r]esidence simply indicates a person's actual place of abode, whether permanent or temporary. Thus, a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary. Notably, a person's residence is distinguishable from a person's domicile. . . . Beyond mere physical presence, activities possibly indicative of a person's place of residence are numerous and diverse, and there are a multitude of facts a jury might look to when answering whether a sex offender has changed his or her address.

*State v. Abshire*, 363 N.C. 322, 331-32, 677 S.E.2d 444, 450-51 (2009) (citations and quotation marks omitted).

Further, this Court has applied the Supreme Court's definition of "address" in a case where, as here, the defendant

was homeless. In *State v. Worley*, we held that "everyone does, at all times, have an 'address' of some sort, even if it is a homeless shelter, a location under a bridge or some similar place." *State v. Worley*, 198 N.C. App. 329, 338, 679 S.E.2d 857, 864 (2009). We noted that "[t]he purpose of the sex offender registration program is to assist law enforcement agencies and the public in knowing the whereabouts of sex offenders and in locating them when necessary." *Id.* at 334-35, 679 S.E.2d at 862 (citation and quotation marks omitted). As a result, we rejected the defendant's argument that homeless sex offenders have no address for purposes of the registration statutes, reasoning that a contrary holding would render "such individuals . . . effectively immune from the registration requirements found in current law as long as they continued to 'drift.'" *Id.* at 338, 679 S.E.2d at 864.

Even assuming that the language of the statute is ambiguous, defendant had full notice of what was required of him, given the judicial gloss that the appellate courts have put on it. *See Lanier*, 520 U.S. at 267, 137 L.Ed. 2d at 443. Certainly after *Abshire* and *Worley*, if not before, a person of reasonable intelligence would understand that a sex offender is required to inform the local sheriff's office of the physical

location where he resides within three business days of a change, even if that location changes from one bridge to another, or one couch to another. *Worley*, 198 N.C. App. at 338, 679 S.E.2d at 864. Although this obligation undoubtedly places a large burden on homeless sex offenders, it is clear that they bear such a burden under N.C. Gen. Stat. § 14-208.9 and that under N.C. Gen. Stat. § 14-208.11(a)(2) they may be punished for willfully failing to meet the obligation. Moreover, the fact that it may sometimes be difficult to discern when a homeless sex offender changes addresses does not make the statute unconstitutionally vague or relieve him of the obligation to inform the relevant sheriff's office when he changes addresses. *See Williams*, 553 U.S. at 306, 170 L.Ed. 2d at 670.

Here, the notice actually given to defendant by the local sheriff's office when he registered, and signed by defendant, reflected this obligation. The statement initialed by defendant stated, "I shall report the address or a detailed description of every location I reside or live at. I understand I must report a location even if it does not have a street address."

We hold that N.C. Gen. Stat. § 14-208.11 is not void for vagueness as applied to defendant because a person of ordinary intelligence in defendant's circumstances would understand what

was required of him. *See Burrus*, 275 N.C. at 531, 169 S.E.2d at 888. Therefore, the trial court did not err in denying defendant's motion to dismiss on this basis.

C.   Sufficiency of the Evidence

Defendant next argues that even if the statute is not void for vagueness the State failed to present sufficient evidence that he changed addresses. He acknowledges that the State presented evidence that he was not residing at his registered address, the Samaritan's Ministries homeless shelter, but reasons that the State never presented any evidence of where he was actually residing because he was moving from place to place and had no permanent "address." But that is not what the State is required to prove.

> [T]he offense of failing to notify the appropriate sheriff of a sex offender's change of address contains three essential elements: (1) the defendant is a person required to register; (2) the defendant changes his or her address; and (3) the defendant willfully fails to notify the last registering sheriff of the change of address, not later than the third day after the change.

*State v. Fox*, 216 N.C. App. 153, 156-57, 716 S.E.2d 261, 264-65 (2011) (citations, quotation marks, ellipses, and brackets omitted). Defendant does not contest that he was required to register and that he never notified the last registering sheriff

of a new address. He simply contends that because he had no new address, the State cannot show that it changed.

The State is not required to show what defendant's new address was. The State is simply required to show that defendant changed his address. Defendant's argument is similar to the one we rejected in *Worley*, that a homeless defendant has no residence and therefore no "address." *See Worley*, 198 N.C. App. at 338, 679 S.E.2d at 864. The State can show that defendant changed his address simply by showing that he was no longer residing at the last registered address because "*everyone* does, at all times, have an 'address' of some sort." *Id.*

Here, the evidence showed that defendant registered his address as the Samaritan Ministries, but that defendant had not been living there for at least the two weeks prior to 26 October 2012. Defendant registered his address on 10 October 2012 as Samaritan Ministries. When Deputy Holland went to verify defendant's address he discovered that Samaritan Ministries had no record of defendant having stayed there for over two years. Two employees from Samaritan Ministries testified that they had no record of defendant staying with them in October 2012. They further testified that everyone who stayed with them had to be signed in. The registration card maintained by the shelter

showed that defendant's card had not been stamped since 2008. Thus, there was substantial evidence showing that defendant conducted none of the "activities of life" consistent with residency at the homeless shelter after being released from prison. *Abshire*, 363 N.C. at 332, 677 S.E.2d at 451.

As explained in *Worley*, everyone, at all times, has *some* address for purposes of the sex offender registration statutes, even if it changes daily. *Worley*, 198 N.C. App. at 338, 679 S.E.2d at 864. Thus, proof that defendant was not living at his registered address is proof that his address had changed. *See id.* at 337, 679 S.E.2d at 863 ("At an absolute minimum, the record contains evidence tending to show that Defendant left Lee Walker Heights on or before 10 August 2005 and failed to report a new address until 16 September 2005.").

We conclude that the State presented sufficient evidence, taken in the light most favorable to the State, that defendant was residing at some address different from the one last registered without notifying the local sheriff of a change in address. Therefore, we hold that there was sufficient evidence that defendant violated N.C. Gen. Stat. § 14-208.11(a)(2) and that the trial court did not err in denying defendant's motion to dismiss.

### III. Motion to Suppress

Defendant argues that the trial court erred in denying his motion to suppress his videotaped statement to the police because the officers failed to properly give the *Miranda* warnings. We remand so that the trial court may make adequate conclusions of law, as required by statute.

Defendant moved to suppress his statements under the Fifth and Sixth Amendments to the United States Constitution and Article 1, sections 19, 23, and 24 of the North Carolina Constitution. The trial court heard the motion before trial on 24 June 2013. It denied the motion orally in court and entered an order with written findings on 24 June 2013. Defendant objected to Detective Gargiulo's testimony regarding what he said during the interview and to the admission of the DVD of the interview. Therefore, his challenges to the admission of these statements have been fully preserved.

The trial court made the following findings, none of which are contested by defendant:

> 1. Defendant Omar Andre McFarland is a convicted sex offender required to comply with North Carolina's sex offender registry.
>
> 2. On October 20, 2012, Detective Paolo Gargiulo of the Forsyth County Sheriff's Office obtained a warrant for Defendant McFarland's arrest for failing to comply

with the sex offender registry change of address requirements.

3. Forsyth County Deputy Ron Lewis tried unsuccessfully to serve the warrant on Defendant McFarland on November 7, 2012, but he did inform friends and family members of the Defendant that the Defendant should contact the Sheriff's Office. Deputy Lewis did not tell any of the friends or family that there was a warrant out for the Defendant.

4. Later that afternoon on November 7, 2012, Defendant McFarland called the Sheriff's Office, spoke with Detective Gargiulo and arranged a meeting for the next morning (November 8) at 9am. Detective Gargiulo did not tell Defendant he had a warrant.

5. Defendant McFarland came, on his own, to the sheriff's office November 8, 2012, signed in and was escorted to an unsecured interview room. He was not under arrest, but the interview was recorded by video.

6. Defendant McFarland entered the interview room alone, but was soon joined by Detective Gargiulo and Forsyth County Corporal B. Sales, both of whom were dressed in plain clothes. Neither gave Defendant any *Miranda* warnings.

7. Corporal Sales closed the interview room door, but it remained unlocked. Detective Gargiulo told Defendant, "the door is open—just getting some privacy." No officer was guarding the inside or outside of the interview room.

8. At the end of the interview when he was arrested, the Defendant was frisked and

placed in handcuffs. Prior to then, he was unrestrained.

The trial court then cited a variety of legal standards from applicable case law, but never made a conclusion about whether defendant was in custody at the relevant time, nor did it ever apply the law it cited to the facts of this case. At the hearing, the trial court announced that it was going to deny the motion, but made no oral findings or conclusions.

> N.C. Gen. Stat. § 15A-977(f) (2011) provides that when a trial court rules on a motion to suppress, "[t]he judge must set forth in the record his findings of facts and conclusions of law." We have interpreted this statute as mandating a written order unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing. When a trial court's failure to make findings of fact and conclusions of law is assigned as error, the appropriate standard of review on appeal is as follows: The trial court's ruling on the motion to suppress is fully reviewable for a determination as to whether the two criteria . . . have been met.
>
> If a reviewing court concludes that both criteria are met, then the findings of fact are implied by the trial court's denial of the motion to suppress. If a reviewing court concludes that either of the criteria is not met, then a trial court's failure to make findings of fact, contrary to the mandate of section 15A-977(f), is fatal to the validity of its ruling and constitutes reversible error.

*State v. Morgan*, ___ N.C. App. ___, ___, 741 S.E.2d 422, 424-25 (2013) (citations, quotation marks, and brackets omitted).

This case is unusual because although the trial court made a number of relevant findings of fact, the trial court did not give *any* explanation for denying defendant's motion from the bench and did not include *any* conclusions of law in its written order. The "conclusions of law" in the written order were simply statements of law such as "4. It is important to consider circumstances such as a 'police officer standing guard at the door, locked doors, or application of handcuffs' in determining whether an individual is in custody. *State v. Buchanan*, 353 N.C. 332 (2001)."

Generally, a conclusion of law requires "the exercise of judgment" in making a determination, "or the application of legal principles" to the facts found. *Sheffer v. Rardin*, 208 N.C. App. 620, 624, 704 S.E.2d 32, 35 (2010) (citations and quotation marks omitted). Not one of the "conclusions" here applied the law to the facts of this case. Although we can imagine how the facts as found by the trial court would likely fit into the legal standards recited in the section of the order which is identified as "conclusions of law," based upon the trial court's denial of the motion, it is still the trial

court's responsibility to make the conclusions of law. The mandatory language of N.C. Gen. Stat. § 15A-977(f) ("The judge must set forth in the record his findings of facts *and conclusions of law*." (emphasis added)) forces us to conclude that the trial court's failure to make any conclusions of law in the record was error.

"Where there is prejudicial error in the trial court involving an issue or matter not fully determined by that court, the reviewing court may remand the cause to the trial court for appropriate proceedings to determine the issue or matter without ordering a new trial." *State v. Neal*, 210 N.C. App. 645, 656, 709 S.E.2d 463, 470 (2011) (citation and quotation marks omitted).

> If the trial court determines that the motion to suppress was properly denied, then defendant would not be entitled to a new trial because there would have been no error in the admission of the evidence, and his convictions would stand. If, however, the court determines that the motion to suppress should have been granted, defendant would be entitled to a new trial.

*Id.* at 656-57, 709 S.E.2d at 470-71. We have found no other prejudicial error at defendant's trial. Therefore, the trial court's failure to make adequate conclusions to support its decision to deny defendant's motion to suppress does not require

that we order a new trial. *See State v. Booker*, 306 N.C. 302, 313, 293 S.E.2d 78, 84-85 (1982). We remand for the trial court to make appropriate conclusions of law with regard to defendant's motion to suppress.

## IV.  Conclusion

For the foregoing reasons, we hold that the trial court did not err in denying defendant's motion to dismiss. Nevertheless, the trial court failed to make adequate conclusions of law to justify its decision to deny defendant's motion to suppress his statement. Therefore, we must remand to allow the trial court to make appropriate conclusions of law based upon the findings of fact.

NO ERROR in part; REMANDED.

Judges CALABRIA and DAVIS concurs.