*625
 
 INMAN, Judge.
 

 *256
 
 When the evidence relevant to a defendant's motion to suppress is undisputed, a trial court denying the motion need not make findings of fact, but it must explain its rationale. Failure to do so precludes meaningful appellate review and requires remand.
 

 Tiffany Faulk ("Defendant") appeals from a judgment following a jury verdict finding her guilty of first degree murder on the basis of malice, premeditation and deliberation. Defendant argues that: (1) the trial court committed plain error by failing to instruct the jury on the defense of duress; (2) the trial court abused its discretion by allowing into evidence photographs depicting the victim's injuries and the crime scene; and (3) the trial court erred by denying her motions to suppress other evidence. After careful review, we remand to the trial court to make the necessary conclusions of law regarding Defendant's motions to suppress.
 

 Factual and Procedural History
 

 The evidence at trial tended to show the following:
 

 On 6 November 2010, Defendant and Kenneth Gore ("Gore") were staying with a friend in the Berry Court Apartments in Chadbourn, North Carolina. On occasion, and twice on 6 November 2010, Defendant would knock on Ms. Bonnie Fowler's door to use her phone. Ms. Fowler, a 77-year-old woman, lived alone in the apartment next door to where Defendant and Gore were staying, and would oblige Defendant's request to make calls.
 

 At some point in the late afternoon or early evening of 6 November 2010, Ms. Fowler was attacked in her kitchen. She suffered repeated blows to the head and multiple stab wounds, and died as a result of her injuries. Security footage from the apartment complex showed Ms. Fowler's car leaving the parking lot that same evening at approximately 8:13 p.m.
 

 The next day, 7 November 2010, around 9:00 a.m., Ms. Fowler's daughter arrived at her mother's apartment to pick her mother up for church. When Ms. Fowler did not answer her door, her daughter retrieved an extra key and let herself into Ms. Fowler's apartment. Upon entering, Ms. Fowler's daughter found the apartment ransacked and her mother's body in the kitchen; she immediately called 9-1-1.
 

 *257
 
 Police arrived and secured the crime scene. Detectives found several bloody footprints in the kitchen. Police also found a hammer in one of the closets, which later tested positive for the presence of Ms. Fowler's blood. The medical examiner documented numerous injuries, which included several defensive wounds and stab wounds. The medical examiner concluded that the cause of death was from multiple stab wounds to Ms. Fowler's chest.
 

 On 9 November 2010, the North Carolina State Bureau of Investigation (the "SBI") contacted the Maryland State Police regarding Defendant's and Gore's outstanding arrest warrants in connection with Ms. Fowler's death. The SBI provided Maryland police with copies of the arrest warrants and a description of the homicide and apparent theft of Ms. Fowler's car. Maryland police contacted Defendant's sister, who was living in Baltimore. Defendant's sister took police to a row house in Baltimore where Defendant and Gore were staying.
 

 Maryland police converged on the row house, and as officers knocked on the front door, Gore fled out the back door where he was immediately apprehended by police. Gore told police that Defendant was upstairs, and two officers entered the row house, performed a protective sweep, and arrested Defendant. The officers secured the house while a search warrant was obtained. While the officers were waiting for the warrant, the owner of the house arrived.
 

 Once the warrant was issued, the owner of the row house led police to items identified as belonging to Defendant and Gore. The police recovered various items from the basement, including the following: clothing, a steak knife, a pair of Jordan tennis shoes, a pair of Adidas tennis shoes, a cell phone, and a pill bottle with Ms. Fowler's name on it. Crime lab results from the items revealed that the two pairs of shoes were consistent with the shoes that made the bloody shoeprints in Ms. Fowler's apartment. The Adidas
 
 *626
 
 tennis shoes also tested positive for Ms. Fowler's DNA.
 

 On 17 November 2010, Defendant provided police with a voluntary statement concerning the events leading up to her arrest. During the interview, Defendant told police that she had used Ms. Fowler's phone twice on 6 November 2010, witnessed Gore stab Ms. Fowler while Ms. Fowler was bleeding on the kitchen floor, and drove Ms. Fowler's car to Baltimore with Gore. Defendant explained that she had not attempted to flee from Gore because she was afraid of how he would react.
 

 Defendant was indicted on 10 February 2011 for one count of first degree murder and on 6 October 2011 for one count of robbery with
 
 *258
 
 a dangerous weapon. A hearing was held on 25 July 2016 to address Defendant's various pre-trial motions, including three motions to suppress-the first filed in August 2013 and the second two filed on 5 and 14 July 2016.
 

 At the outset of the hearing, Defendant's counsel withdrew the August 2013 motion to suppress. Defendant's counsel proceeded to argue the motions filed on 5 and 14 July 2016, which sought to exclude evidence obtained from the Baltimore row house following Defendant's arrest and pursuant to a search warrant and Defendant's statement to police. The trial court denied the motions, announcing from the bench that "the State has met its burden, proven by a preponderance of the evidence; that the challenged evidence is admissible." The trial court then instructed the prosecutor to draft a written order disposing of the motions to suppress, stating that "there's no conflict as to the testimony and the evidence presented." The trial court then asked whether there was "[a]nything else we need to address from the defense in regards to those motions?" Defense counsel responded, "No, sir."
 

 At trial, Defendant's counsel properly objected to each item of evidence which the motions to suppress sought to exclude. Following presentation of the evidence, the trial court instructed the jury on first degree
 
 *627
 
 murder on the basis of premeditation and deliberation, armed robbery, and felony murder based on armed robbery. The trial court also instructed the jury on duress as a defense to the armed robbery and first degree murder on the basis of felony murder charges.
 

 The jury returned a verdict finding Defendant guilty of first degree murder on the basis of premeditation and deliberation and guilty of robbery with a dangerous weapon. The trial court imposed a mandatory life prison sentence without the possibility of parole for the first degree murder conviction and 73 to 97 months in prison for the robbery with a dangerous weapon conviction.
 

 Defendant entered a notice of appeal in open court.
 

 Analysis
 

 I. Jury Instructions
 

 Defendant first argues that the trial court committed plain error by failing to instruct the jury on duress as a defense to the charge of first degree murder on the basis of premeditation and deliberation. We disagree.
 

 Both parties assert plain error as the proper standard of review on appeal because Defendant's counsel failed to renew his request for a
 
 *259
 
 duress instruction as a defense for premeditation and deliberation. However, our Supreme Court's decision in
 
 Wall v. Stout
 
 ,
 
 310 N.C. 184
 
 , 189,
 
 311 S.E.2d 571
 
 , 574 (1984), suggests that a defendant properly preserves a jury instructional issue when "a request to alter an instruction has been submitted and the trial judge has considered and refused the request." Here, Defendant's initial request for a duress instruction, coupled with the trial court's subsequent refusal, would appear to satisfy the issue of preservation. However, as discussed below, Defendant has failed to demonstrate that the trial court erred, and is therefore unsuccessful under either a plain error or
 
 de novo
 
 review.
 

 The North Carolina Supreme Court has held that "duress is not a defense to murder in North Carolina."
 
 State v. Cheek
 
 ,
 
 351 N.C. 48
 
 , 61,
 
 520 S.E.2d 545
 
 , 553 (1999). Our Court, relying on the decision in
 
 Cheek
 
 , has held further that a trial court does not commit plain error by failing to instruct a jury on the defense of duress for a charge of first degree murder on the basis of premeditation and deliberation.
 
 State v. Clodfelter
 
 ,
 
 203 N.C. App. 60
 
 , 68,
 
 691 S.E.2d 22
 
 , 27 (2010) (overruling the defendant's argument that the trial court committed plain error because "[d]uress is not a defense to first degree murder[,]" and the jury found the defendant guilty "on the basis of premeditation and deliberation").
 

 Notwithstanding established precedent, Defendant cites
 
 State v. Gibson
 
 ,
 
 333 N.C. 29
 
 ,
 
 424 S.E.2d 95
 
 (1992),
 
 overruled on other grounds by
 

 State v. Lynch
 
 ,
 
 334 N.C. 402
 
 ,
 
 432 S.E.2d 349
 
 (1993), and
 
 State v. Grant
 
 ,
 
 178 N.C. App. 565
 
 ,
 
 632 S.E.2d 258
 
 (2006), in support of her contention that duress may be used as a permissible defense to first degree murder on the basis of premeditation and deliberation. However, a close reading of these decisions reveals that neither reaches the issue of whether it is proper for a trial court to instruct on the defense of duress; rather, the decisions address whether-when a defendant attacks the intent element of premeditation and deliberation by arguing duress at the commission of the crime-the State may properly submit evidence of a defendant's prior bad acts under Rule 404(b) of the North Carolina Rules of Evidence.
 
 Gibson
 
 ,
 
 333 N.C. at 42-43
 
 ,
 
 424 S.E.2d at
 
 103 ;
 
 Grant
 
 ,
 
 178 N.C. App. at 578
 
 ,
 
 632 S.E.2d at 268
 
 . Both decisions resolved this issue in favor of the State.
 
 Gibson
 
 ,
 
 333 N.C. at 42-43
 
 ,
 
 424 S.E.2d at 103
 
 (holding that statements made by the defendant regarding prior crimes were admissible "under the exception in ... Rule 404(b) for evidence tending to prove some aspect of the State's case other than character or propensity to commit the crimes at issue");
 
 Grant
 
 ,
 
 178 N.C. App. at 578
 
 ,
 
 632 S.E.2d at 268
 
 (holding that "evidence that [the] defendant robbed drug dealers and hit a drug dealer during a robbery was clearly relevant
 
 *260
 
 to refute [the] defendant's contention that he shot the victim without premeditation and deliberation").
 

 Gibson
 
 and
 
 Grant
 
 are inapposite to the case before us, because Defendant is challenging the trial court's failure to charge the jury with the defense of duress on the charge of first degree murder on the basis of premeditation and deliberation, not the admissibility of evidence under Rule 404(b). As discussed above, the issue here was determined by
 
 Clodfelter
 
 where we held, as we do today, that a trial court does not commit plain error by failing to instruct on the defense of duress on a charge of first degree murder on the basis of premeditation and deliberation.
 
 Clodfelter
 
 ,
 
 203 N.C. App. at 68
 
 ,
 
 691 S.E.2d at 27
 
 . Accordingly, we overrule Defendant's argument.
 

 II. Photographic Evidence
 

 Defendant next argues that the trial court abused its discretion by admitting repetitious photographs of the victim and crime scene that unfairly prejudiced her-an error for which Defendant now seeks a new trial. We disagree.
 

 The determination of whether to admit photographic evidence "lies within the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Goode
 
 ,
 
 350 N.C. 247
 
 , 258,
 
 512 S.E.2d 414
 
 , 421 (1999) (citation omitted). In making this determination, a trial court must weigh the probative value of the photographs against the danger of unfair prejudice to the defendant. N.C. Gen. Stat. § 8C-1, Rule 403 (2015) ;
 
 State v. Hennis
 
 ,
 
 323 N.C. 279
 
 , 283,
 
 372 S.E.2d 523
 
 , 526 (1988). In homicide cases, photographs of the victim "may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury."
 
 Hennis
 
 ,
 
 323 N.C. at 284
 
 ,
 
 372 S.E.2d at 526
 
 (citations omitted).
 

 The North Carolina Supreme Court has explained:
 

 The test for excess is not formulaic: there is no bright line indicating at what point the number of crime scene or autopsy photographs becomes too great. The trial court's task is rather to examine both the content and the manner in which photographic evidence is used and to scrutinize the totality of circumstances composing
 
 *628
 
 that presentation. What a photograph depicts, its level of detail and scale,
 
 *261
 
 whether it is color or black and white, a slide or a print, where and how it is projected or presented, the scope and clarity of the testimony it accompanies-these are all factors the trial court must examine in determining the illustrative value of photographic evidence and in weighing its use by the state against its tendency to prejudice the jury.
 

 Id.
 
 at 285,
 
 372 S.E.2d at 527
 
 (citation omitted). The Court in
 
 Hennis
 
 further noted that "photographs of the victim's body may be used to illustrate testimony as to the cause of death[.] Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by a defendant's stipulation as to the cause of death."
 
 Id.
 
 at 284,
 
 372 S.E.2d at 526
 
 (citations omitted). "Photographs depicting [t]he condition of the victim's body, the nature of the wounds, and evidence that the murder was done in a brutal fashion [provide the] circumstances from which premeditation and deliberation can be inferred."
 
 State v. Hyde
 
 ,
 
 352 N.C. 37
 
 , 54,
 
 530 S.E.2d 281
 
 , 293 (2000) (alterations in original) (internal quotation marks and citations omitted). Ultimately, "[t]he large number of photographs, in itself, is not determinative."
 
 State v. Goode
 
 ,
 
 350 N.C. 247
 
 , 259,
 
 512 S.E.2d 414
 
 , 421 (1999).
 

 Here, the trial court allowed the State to introduce approximately twenty photographs. These photographs depicted various angles and details of the crime scene. They depicted the victim's location and her injuries. The photographs corroborated Defendant's statement to officers that the victim was attacked in her kitchen, suffered a head injury, and was stabbed multiple times. The autopsy photographs illustrated the testimony of the medical examiner who described the injures as consistent with multiple and particular weapons, the defensive characteristics of some injuries, and the deliberate and persistent nature of the attack. We conclude that the photographs were relevant and had probative value.
 

 We now review whether any unfair prejudice to Defendant outweighed the probative value of the photographs. We acknowledge that "the admission of an excessive number of photographs depicting substantially the same scene may be sufficient ground for a new trial when the additional photographs add nothing in the way of probative value but tend solely to inflame the jurors."
 
 State v. Mercer
 
 ,
 
 275 N.C. 108
 
 , 120,
 
 165 S.E.2d 328
 
 , 337 (1969) (citation omitted),
 
 overruled on other grounds by
 

 State v. Caddell
 
 ,
 
 287 N.C. 266
 
 , 290,
 
 215 S.E.2d 348
 
 , 363 (1975). However, we also
 
 *262
 
 note that "[t]his determination is within the sound discretion of the trial court[.]"
 
 Goode
 
 ,
 
 350 N.C. at 258
 
 ,
 
 512 S.E.2d at 421
 
 (citation omitted).
 

 Having reviewed the photographs and determined their relevancy and probative value-that they corroborate Defendant's statements, illustrate the medical examiner's testimony, and tend to support a finding of premeditation and deliberation-we cannot conclude that the trial court's decision was so arbitrary that it could not have been supported by reason. Accordingly, we overrule Defendant's argument.
 

 III. Motions to Suppress
 

 Defendant's final argument is that the trial court erred by denying her motions to suppress evidence and her statements to police because they were tainted by an illegal arrest and search warrant.
 
 [1]
 
 Because the trial court failed to provide its rationale for denying the motions at the hearing and its written order lacks adequate conclusions of law, we are unable to engage in meaningful appellate review with regard to this issue.
 

 "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of
 
 *629
 
 law."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011) (citation omitted). Where, as here, the trial court's findings of fact are not challenged on appeal, "they are deemed to be supported by competent evidence and are binding on appeal."
 
 Id.
 
 at 168,
 
 712 S.E.2d at 878
 
 (citation omitted). Conclusions of law, however, are reviewed
 
 de novo
 
 .
 
 See
 

 State v. McCollum
 
 ,
 
 334 N.C. 208
 
 , 237,
 
 433 S.E.2d 144
 
 , 160 (1993). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (internal quotation marks and citations omitted).
 

 When ruling on a motion to suppress following a hearing, "[t]he judge must set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2015). While this statute has been interpreted by the North Carolina Supreme Court to require findings of fact "only when there is a material conflict in the evidence[,]"
 
 State v. Bartlett
 
 ,
 
 368 N.C. 309
 
 , 312,
 
 776 S.E.2d 672
 
 , 674 (2015), our Court has explained that "it is still the trial court's responsibility to make the
 
 *263
 
 conclusions of law."
 
 State v. McFarland
 
 ,
 
 234 N.C. App. 274
 
 , 284,
 
 758 S.E.2d 457
 
 , 465 (2014).
 

 "Generally, a conclusion of law requires 'the exercise of judgment' in making a determination, 'or the application of legal principles' to the facts found."
 
 State v. McFarland
 
 ,
 
 234 N.C. App. at 284
 
 ,
 
 758 S.E.2d at 465
 
 (quoting
 
 Sheffer v. Rardin
 
 ,
 
 208 N.C. App. 620
 
 , 624,
 
 704 S.E.2d 32
 
 , 35 (2010) ). When a trial court fails to make all the necessary determinations,
 
 i.e.
 
 , findings of fact resolving disputed issues of fact and conclusions of law applying the legal principles to the facts found, "[r]emand is necessary because it is the trial court that is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts,
 
 and, then based upon those findings, render a legal decision, in the first instance
 
 , as to whether or not a constitutional violation of some kind has occurred."
 
 State v. Baskins
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 94
 
 , 99 (2016) (emphasis added) (internal quotation marks and citation omitted);
 
 see also
 

 State v. Salinas
 
 ,
 
 366 N.C. 119
 
 , 124,
 
 729 S.E.2d 63
 
 , 67 (2012) (holding that remand was necessary for additional findings of fact that resolved the conflicts in evidence).
 

 In
 
 Baskins
 
 , this Court reviewed a similar order denying a defendant's motion to suppress. --- N.C. App. at ----,
 
 786 S.E.2d at 99-100
 
 . The trial court's order contained the following sole conclusion of law regarding the validity of a traffic stop:
 

 The temporary detention of a motorist upon probable cause to believe he has violated a traffic law (such as operating a vehicle with expired registration and inspection) is not inconsistent with the Fourth Amendment's prohibition against unreasonable searches and seizures, even if a reasonable officer would not have stopped the motorist for the violation. [citation omitted] [Detective] O'Hal was justified in stopping [the] Defendant[s'] vehicle.
 

 Id.
 

 at ----,
 
 786 S.E.2d at 99
 
 (alterations in original). Our Court noted that the conclusion "does not specifically state that the stop was justified based upon any specific violation of a traffic law."
 

 Id.
 

 at ----,
 
 786 S.E.2d at 100
 
 . We explained that "[a]lthough we can imagine how the facts as found by the trial court would likely fit into the legal standards recited in the section of the order which is identified as 'conclusions of law,' based upon the trial court's denial of the motion, it is still the trial court's responsibility to make the conclusions of law."
 
 Id
 
 . at ----,
 
 786 S.E.2d at 100
 
 . We held that the conclusion did not reflect the necessary exercise of judgment or application of legal principles, and remanded the matter
 
 *264
 
 back to the trial court to make additional findings of fact and conclusions of law.
 

 Id.
 

 at ----,
 
 786 S.E.2d at 99-100
 
 .
 

 As in
 
 Baskins
 
 , the trial court here did not provide its rationale during the hearing and the trial court's order lacks adequate conclusions of law applying necessary legal principles to the facts presented. The written order's sole conclusion of law states:
 

 That [N.C. Gen. Stat. §] 15A-401(E) was not applicable to the arrest of Tiffany Faulk in the State of Maryland and the arrest and subsequent search was not in violation of the Fourth and Fourteenth
 
 *630
 
 Amendments of the United States Constitution, therefore, the motion to suppress filed by the Defendant in this matter on July 5, 2016 is hereby denied.
 

 This conclusion does not provide the trial court's rationale regarding why Defendant's warrantless arrest while in a private home-an act that was held unconstitutional by the United States Supreme Court in
 
 Payton v. New York
 
 ,
 
 445 U.S. 573
 
 ,
 
 100 S.Ct. 1371
 
 ,
 
 63 L.Ed.2d 639
 
 (1980) -did not violate Defendant's Fourth and Fourteenth Amendments rights. While the undisputed evidence and facts found by the trial court support the denial of the motion, the order lacks any conclusion applying legal principles to those facts,
 
 i.e
 
 ., it omits an appropriate determination in the first instance. Therefore, we must remand this matter to the trial court to provide adequate conclusions of law to support its denial of the 5 July 2016 motion to suppress evidence obtained as the result of Defendant's warrantless arrest.
 

 The trial court's written order does not address the 14 July 2016 motion to suppress evidence obtained pursuant to the search warrant. It is apparent from the trial transcript that defense counsel understood the trial court's announcement, that "the challenged evidence is admissible," amounted to a denial of that motion. However, neither the trial court's cursory explanation of its ruling nor the written order provides a rationale for this denial. Accordingly, we must remand the denial of the 14 July 2016 motion to suppress to the trial court to make necessary conclusions of law relevant to the challenged search warrant.
 

 Defendant also argues that the trial court's ruling was inadequate because the findings of fact in the written order do not relate to the search warrant and therefore cannot support a conclusion denying the 14 July 2016 motion. However, the absence of factual findings alone is not error because "only a material conflict in the evidence-one that potentially affects the outcome of the suppression motion-must be
 
 *265
 
 resolved by explicit factual findings that show the basis for the trial court's ruling."
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . "When there is no conflict in the evidence, the trial court's findings can be inferred from its decision."
 
 Id.
 
 at 312,
 
 776 S.E.2d at 674
 
 . The North Carolina Supreme Court has noted that while "[a] written determination setting forth the findings and conclusions is not necessary, [ ] it is the better practice."
 
 Id.
 
 at 312,
 
 776 S.E.2d at
 
 674 (citing
 
 State v. Oates
 
 ,
 
 366 N.C. 264
 
 , 268,
 
 732 S.E.2d 571
 
 , 574 (2012) ). Because the evidence relevant to the search warrant was undisputed, the trial court was not required to make findings of fact to support its denial of the 14 July 2016 motion; we hold Defendant's argument on this issue is without merit.
 

 Even though findings of fact are not required, the trial court's failure to provide its rationale from the bench, coupled with the omission of any mention of the motion challenging the search warrant, precludes meaningful appellate review of that ruling. It is the trial court's duty to apply legal principles to the facts, even when they are undisputed. We therefore hold that the trial court erred by failing to either provide its rationale from the bench or make the necessary conclusions of law in its written order addressing both of Defendant's motions to suppress.
 

 "Where there is prejudicial error in the trial court involving an issue or matter not fully determined by that court, the reviewing court may remand the cause to the trial court for appropriate proceedings to determine the issue or matter without ordering a new trial."
 
 State v. Neal
 
 ,
 
 210 N.C. App. 645
 
 , 656,
 
 709 S.E.2d 463
 
 , 470 (2011) (internal quotation marks and citations omitted).
 

 If the trial court determines that the motion to suppress was properly denied, then [the] defendant would not be entitled to a new trial because there would have been no error in the admission of the evidence, and his convictions would stand. If, however, the court determines that the motion to suppress should have been granted, [the] defendant would be entitled to a new trial.
 

 Id.
 
 at 656-57,
 
 709 S.E.2d at 470-71
 
 . Having held that Defendant has shown no other prejudicial error in her trial, we conclude that the trial court's failure to make adequate conclusions of law to support its denial of Defendant's motions to suppress does not
 
 *631
 
 require that we order a new trial.
 
 See
 

 McFarland
 
 ,
 
 234 N.C. App. at 284
 
 ,
 
 758 S.E.2d at 465
 
 . Accordingly, we remand this matter to the trial court to make necessary conclusions of law concerning Defendant's motions to suppress.
 
 *266
 

 Conclusion
 

 For the foregoing reasons, we hold that the trial court did not err by failing to instruct the jury on duress as a defense to first degree murder on the basis of premeditation and deliberation. We also hold that the trial court did not abuse its discretion by admitting the photographs depicting the crime scene and the victim's injuries. Finally, we hold that the trial court did not err in failing to make findings of fact to support its ruling because the evidence related to the rulings was undisputed. Nevertheless, we remand this case to the trial court to make proper conclusions of law regarding its decision to deny Defendant's motions to suppress. If, on remand, the trial court decides to make additional findings of fact, it has the discretion to do so.
 

 NO ERROR IN PART, REMANDED IN PART.
 

 Judges BRYANT and DAVIS concur.
 

 [1]
 

 Defendant asserts in her brief before this Court that she appeals the trial court's denial of three motions to suppress. However, the record reveals that Defendant withdrew her initial motion to suppress, which was filed in August 2013. Accordingly, we only address Defendant's appeal as to the two motions filed in July 2016.